UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

|  |  |
|---|---|
| KENTUCKY CVS PHARMACY, LLC<br>One CVS Drive<br>Woonsocket, RI 02895<br><br>        Plaintiff,<br><br>vs.<br><br>JOHN MCKINNEY,<br>104 Whispering Woods Drive<br>Richmond, Kentucky  40475<br><br>and<br><br>MARY ANN MCKINNEY,<br>104 Whispering Woods Drive<br>Richmond, Kentucky  40475<br><br>and<br><br>LOUISE WAGERS MCCORD TRUST B<br>c/o Eleanor McCord McKinney, Trustee<br>720 Barnes Mill Road<br>Richmond, Kentucky  40475<br><br>and<br><br>SPENCER DRUG, LLC<br>dba Madison Drug<br>10727 Stone Street<br>Union, Kentucky  41091<br><br>        Defendants. | Civil Action No.<br>_____ |

**COMPLAINT FOR MONEY**
**DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Kentucky CVS Pharmacy, LLC ("**CVS**"), for its Complaint For Money

Damages and Injunctive Relief against Defendants John W. McKinney ("**John**

13250463.1

McKinney"), Mary Ann McKinney ("**Mary McKinney**") (together referred to as the "**McKinneys**"), the Louise Wagers McCord Trust B (**the** "**Trust**"), and Spencer Drug, LLC dba Madison Drug ("**Spencer Drug**"), alleges as follows:

## INTRODUCTION

1. This is an action to remedy, among other things, Defendants John McKinney and Mary McKinney's breach of their respective covenants not to compete, directly or indirectly, with CVS.  On May 31, 2011, CVS entered into an Asset Purchase and Sale Agreement (the "**Agreement**") (a copy of which is attached as **Exhibit A**) with M & M Drug, Inc. ("**M & M Drug**"), a pharmacy that had been owned and operated by the McKinney family for over fifty years.  Pursuant to the Agreement, CVS agreed to purchase certain inventory of M & M Drug, along with its prescription files, for a purchase price in excess of $1.1 million.  Perhaps most importantly, CVS purchased the goodwill that the McKinney family had established with their customers over the fifty years that it operated M & M Drug.

2. Due in part to the substantial sum paid by CVS for M & M Drug's prescription files, CVS required, and the McKinneys agreed, not to compete – either directly or indirectly – with CVS for a period of 10 years within a 10 mile radius surrounding CVS' store located less than a half mile from M & M Drug.  In consideration of their agreement not to compete with CVS, the McKinneys were individually paid $100,000 each (in addition to the approximate $1.1 million asset purchase price).

3. On November 1, 2012, just seventeen months into the ten year restrictive period, Spencer Drug began operating a pharmacy in the exact same space that M & M Drug formerly operated, and held itself out in a promotional flyer as "Formally [sic -

formerly] known as M & M Drug" (a copy of which is attached as **Exhibit B**) in an attempt to use the very goodwill that CVS had already purchased.  That parcel of real property, located at 110 Big Hill Avenue, Richmond, Kentucky  40475, has been in the McKinney family for over fifty years, originally owned by Defendant McKinney's grandparents and currently owned by the Trust.  Throughout the negotiations and through the execution of the Agreement, the McKinneys represented to CVS that they – and not the Trust – owned the property.

4.     To this day, the McKinneys together, or individually, hold an interest in the Trust that leases property to Spencer Drug, the new competing pharmacy, in the exact same location as the old pharmacy.  CVS would not have signed the Agreement – or paid the McKinneys over $1.3 million – had it known that just seventeen months later, a Trust in which the McKinneys hold an interest would lease space to a direct competitor of CVS.  The new pharmacy, Spencer Drug, is actively soliciting customers of the old pharmacy, M & M Drug.  Such was precisely what the non-competition covenant was intended to prevent, and the McKinneys are in violation of that covenant.

## PARTIES

5.     Plaintiff CVS is a Kentucky limited liability company, the sole member of which is CVS Pharmacy, Inc.  CVS Pharmacy, Inc. is incorporated in the State of Rhode Island and has its principal place of business at One CVS Drive, Woonsocket, Rhode Island  02895.  CVS was and is a citizen of the State of Rhode Island for diversity purposes.

6. Defendant John McKinney is a citizen of the Commonwealth of Kentucky and is believed to reside at 104 Whispering Woods Drive Richmond, Kentucky 40475. John McKinney is the husband of Defendant Mary Ann McKinney.

7. Defendant Mary Ann McKinney is a citizen of the Commonwealth of Kentucky and is believed to reside at 104 Whispering Woods Drive Richmond, Kentucky 40475. Mary Ann McKinney is the wife of Defendant John McKinney.

8. The Defendant Trust is a trust created under the laws of the Commonwealth of Kentucky by Louise Wagers McCord, who, upon information and belief, was the now-deceased grandmother of John McKinney. The Trust was and is a citizen of the Commonwealth of Kentucky for diversity purposes. As of December 31, 2003 the trustees of the Trust were Eleanor McCord McKinney and the late Roger W. McKinney, who are, upon information and belief, Defendant John McKinney's parents. Upon information and belief, the current sole trustee is Eleanor McCord McKinney, who is believed to reside at 720 Barnes Mill Road, Richmond, Kentucky 40475.

9. Defendant Spencer Drug is a Kentucky limited liability company, the sole member of which, John Spencer, is a citizen of the Commonwealth of Kentucky, with its principal place of business located at 110 Big Hill Road, Richmond, Kentucky 40475. Spencer Drug was and is a citizen of the Commonwealth of Kentucky for diversity purposes. John Spencer is Spencer Drug's registered agent, with an address of 905 Richmond Road, Irvine, Kentucky 40336.

## JURISDICTION & VENUE

10. This is an action for money damages and injunctive relief. This United States District Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, in that

Plaintiff and the Defendants are of diverse citizenship and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

11.     Venue is proper in this Court and district pursuant to 28 U.S.C. § 1391 because CVS conducts business in Richmond, Madison County, Kentucky and the Agreement was entered into and negotiated in Richmond, Madison County, Kentucky for the purchase of assets located in Richmond, Kentucky.  Pursuant to LR 3.1(a)(2)(B), the proper jury division for this action is the Central Division at Lexington.

12.     All conditions precedent to this action have been performed, have occurred, or have been waived.

**FACTUAL ALLEGATIONS COMMON TO
AND INCORPORATED INTO ALL COUNTS OF THE COMPLAINT**

***The McKinneys and M & M Drug***

13.     In 1960, Roger W. McKinney (Defendant John McKinney's now-deceased father) and Lucian McCord (Defendant John McKinney's now-deceased grandfather) opened M & M Drug, a pharmacy located at 110 Big Hill Avenue, Richmond, Kentucky (the "**Big Hill Avenue Property**").  At that time, Louise Wagers McCord (Defendant John McKinney's now-deceased grandmother) and Lucian McCord were the sole owners of the Big Hill Avenue Property.

14.     Defendant John McKinney began working for M & M Drug when he was just 14 years old.

15.     In 1976, John McKinney became a registered pharmacist at M & M Drug. He continued in that capacity for the next 35 years, until May 31, 2011.

16.     When Defendant's father, Roger W. McKinney, retired in 1995, John McKinney and his wife, Mary McKinney, became the owners of M & M Drug. Together, they formed M & M Drug, Inc., a Kentucky corporation.

17.     Continuing their family's business and the servicing of their long-time pharmacy customers, M & M Drug continued to operate out of the Big Hill Avenue Property.

18.     Upon the death of Louise Wagers McCord in 2003, title to the Big Hill Avenue Property was transferred to the Trust.

19.     M & M Drug, through the McKinneys, rented the space at the Big Hill Avenue Property from the Trust with no written lease for $1,000 per month in rental payments. The rental arrangement was not the result of an arms-length transaction. Upon information and belief, the McKinneys were able to achieve these favorable lease terms for M & M Drug because of their interest in, and involvement with, the administration of the Trust and/or their influence over the Trustees of the Trust, including Defendant John McKinney's parents.

**The Asset Purchase and Sale Agreement**

20.     CVS is one of the nation's largest retail pharmacy chains, with over 7,000 stores across 44 states. With more than 40 years in the retail pharmacy industry, the majority of CVS' revenue is generated by its pharmacy business.

21.     CVS grows its pharmacy business by, among other things, acquiring the prescription files and records of other pharmacies across the United States, particularly those of pharmacies with a long-established and loyal customer base in smaller towns

such as Richmond, Kentucky.  CVS' deal with the McKinneys and M & M Drug was such an acquisition.

22. On May 31, 2011, CVS, M & M Drug and the McKinneys entered into the Agreement with CVS.

23. The Agreement provides in pertinent part:

> 6. **NON-COMPETITION COVENANT**
>
> (a) JOHN MCKINNEY, personally, social security #_____, residing at 104 Whispering Woods Drive, Richmond, Kentucky, MARY ANN MCKINNEY, personally, social security #_____, residing at 104 Whispering Woods Drive, Richmond, Kentucky and Seller agree individually and collectively ("Individuals") that they will not, directly or indirectly, during the period commencing on the Date of Inventory and expiring on the ten (10) year anniversary of the Date of Inventory (the "Restrictive Period"): (i) anywhere within a radius of (10) miles of [CVS'] store located at 255 East Main Street, Richmond, Kentucky 40475 (the "Territory"), be employed by[,] form, acquire, invest in, finance, own, operate, manage, assist, support, provide directly or indirectly with, whether as a stockholder, partner, lessor, lessee, member, joint venture, advisor, employee, consultant or independent contractor, an enterprise (a "Competing Business") which is engaged in the business of any pharmacy, drug store and/or health and beauty aid store operation, or any service competitive with, or having the same applications as, any products or services now sold by the Seller in the conduct of its business …

24. The non-competition covenant prohibits the McKinneys from directly and/or indirectly leasing property to a direct competitor of CVS, like Spencer Drug, during the Restrictive Period within the Territory, as those terms are defined in Section 6 of the Agreement.

25. In consideration of that covenant not to compete, CVS paid the McKinneys $200,000 and purchased M & M's pharmacy prescription files and certain merchandise and inventory for an amount in excess of $1.1 million.  CVS also purchased the goodwill established by the McKinney family through their fifty years of operation.

26. For a period of time after the deal closed, CVS employed John McKinney as a pharmacist at CVS' Richmond, Kentucky store. John McKinney signed a Transition Management Agreement with CVS in connection with CVS' purchase of the assets of M &M Drug (Schedule D of the Agreement), the purpose of which was to have John McKinney assist with the transfer of prescription files (and customers) from M & M Drug to CVS. John McKinney reaffirmed his obligation not to compete with CVS in the Transition Management Agreement, which provided that "[t]he non-competition, non-solicitation and non-disclosure provisions, or any of them, set forth in the Asset Purchase and Sale Agreement dated May 31, 2011 are incorporated herein by reference."

27. The Non-Competition Covenant is not just a material term of the Agreement – it is perhaps the most important and material aspect of the Agreement from CVS' perspective, and CVS would not signed the Agreement without the McKinneys' promise to be bound by its terms. Indeed, CVS required the McKinneys to specifically and separately acknowledge the Non-Competition Covenant in their signature blocks to the Agreement – signatures that were witnessed by John McKinney's parents, Roger McKinney and Eleanor McKinney:

```
WITNESS:                              JOHN MCKINNEY AND MARY MCKENNEY,
                                      INDIVIDUALS AGREEING TO BE BOUND
                                      HEREBY UNDER THE TERMS OF ARTICLE 6
                                      OF THIS AGREEMENT

[signature: Roger W. McKinney]        BY: [signature: John W. McKinney]
WITNESS                               JOHN MCKINNEY, INDIVIDUALLY

[signature: Eleanor M. McKinney]      BY: [signature: Mary Ann McKinney]
WITNESS                               MARY MCKINNEY, INDIVIDUALLY
```

28.     In Section 6(c) of the Agreement, the McKinneys agreed that if they breached their non-competition covenant, CVS "shall have available all its right(s) and remedies at law or in equity including the right to a reimbursement" from the McKinneys for the consideration paid pursuant to the Agreement, including the $200,000 paid to the McKinneys.

29.     During the entire negotiation, including the date upon which the Agreement was signed, the McKinneys represented that they owned the Big Hill Avenue Property, and CVS relied on those representations to its detriment.  The second paragraph of section 6 of the Agreement provides: "In the event Seller/Individual (*i.e.* M & M Drug/the McKinneys) should sell the Store and/or the land located at 110 Big Hill Avenue, Richmond, Kentucky [] prior to the end of the Restrictive Period … [the purchaser shall be bound by the same restrictions]."  If CVS had known that the McKinneys did not own the Big Hill Avenue Property at the time they signed the Agreement, this paragraph would have been superfluous and would not have been included therein.  CVS did not know that, contrary to the McKinneys' representations, the Trust owned the Big Hill Avenue Property at the time the Agreement was signed.

**The McKinneys' Breach of the Agreement & Fraud**

30.     In violation of Section 6 of the Agreement, the McKinneys are competing with CVS, directly or indirectly, through their relationship and/or involvement with the Trust and with Spencer Drug, a direct competitor of CVS.

31.     John Spencer formerly worked as a pharmacist at Irvine Health Mart Pharmacy in Irvine, Kentucky.  On September 7, 2012, the Kentucky Board of

Pharmacy issued a new pharmacy license to Spencer Drug, granting John Spencer (the sole member of Spencer Drug) permission to operate a pharmacy in Richmond, Kentucky.

32. That pharmacy, doing business as Madison Drug, opened November 1, 2012 at the Big Hill Avenue Property, which was M & M Drug's former location. Madison Drug is a new member of the Richmond Chamber of Commerce, and a publicly advertised ribbon cutting ceremony was held at the Big Hill Avenue Property on December 14, 2012. The event description, appearing at http://www.richmondchamber.com/wcevents/eventdetail.aspx?eventid=2561, invites "friends and businesses" to "check out our newly renovated pharmacy."

33. Upon information and belief, Spencer Drug leases the Big Hill Avenue Property from the Trust.

34. The Big Hill Avenue Property, which is owned by the Trust, is .4 miles away from CVS' store in Richmond Kentucky – well within the 10 mile radius described in the Non-Competition Covenant.

35. Approximately seventeen months after the Agreement was executed and well within the 10 year Restrictive Period contained in the Non-Competition Covenant, Spencer Drug opened and touted itself as formerly being known as M & M Drug in an attempt to utilize the 50 years of goodwill established by the McKinney family that CVS had already purchased. Since Spencer Drug opened in M & M Drug's former location while promoting itself as formerly being known as M & M Drug, CVS is filling less prescriptions, often as many as several hundred less per week. CVS' loss of customers and prescriptions is a direct and proximate result of Defendants' unlawful conduct.

36. Upon information and belief, the McKinneys are beneficiaries of the Trust, and may be involved in the Trust's administration and/or have significant influence over the Trustee(s) and business interests of the Trust, as evidenced by, among other things, the favorable leasing terms they enjoyed during the period in which M & M Drug operated in the Big Hill Avenue Property.

37. Upon information and belief, John McKinney's mother, Eleanor McCord McKinney is the present trustee of the Trust.

38. Upon information and belief, the new pharmacy, Spencer Drug, pays more than $1000 per month to lease the Big Hill Avenue Property.  As a result, not only did the McKinneys receive $200,000 from CVS for their promise not to compete with CVS, a Trust in which the McKinneys are involved and/or hold an interest is now receiving rental payments as a result of the breach of that promise.

39. CVS purchased the tangible and intangible assets of M & M Drug, including goodwill, that the McKinney family built up over 50 years.  The McKinney are wrongfully attempting to profit further by transferring the goodwill purchased by CVS to a new, competing pharmacy in Spencer Drug, thereby undermining the entire purpose of the Agreement.

### COUNT I
**(BREACH OF CONTRACT AGAINST THE MCKINNEYS)**

40. CVS re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

41. The Agreement constitutes a binding contractual agreement.

42. CVS performed its obligations under the Agreement.

43. The McKinneys have been and are directly and/or indirectly competing with CVS within the Restrictive Period and Territory, as defined in the Agreement, thereby materially breaching the Agreement.

44. CVS has been damaged by the McKinneys' breach of the Agreement in an amount in excess of $75,000.00, to be determined at the trial of this matter.

## COUNT II
### (FRAUD – AGAINST THE MCKINNEYS)

45. CVS re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

46. The McKinneys intentionally concealed and/or misrepresented the fact that they did not own the Big Hill Avenue Property from CVS. On information and belief, at the time that they signed the Agreement, the McKinneys intentionally concealed and/or may have concealed from CVS their intention to facilitate the opening of a new competing pharmacy at the Big Hill Avenue Property. The McKinneys' misrepresentations, omissions, and/or concealments were reasonably calculated to deceive CVS.

47. The McKinneys knew that the misrepresentations, omissions, and/or concealments were false and the McKinneys made such misrepresentations, omissions, and/or concealments with the intention of inducing CVS to sign the Agreement.

48. CVS reasonably relied on the McKinneys misrepresentations, omissions, and/or concealments and has been injured by its reliance.

49.     But for the McKinneys' misrepresentations, omissions, and/or concealments, CVS would not have signed the Agreement or paid the consideration thereunder.

50.     CVS has been damaged by the McKinneys' fraud in an amount in excess of $75,000.00, to be determined at the trial of this matter.

## COUNT III
### (NEGLIGENT MISREPRESENTATION – AGAINST THE MCKINNEYS)

51.     CVS re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

52.     The McKinneys' breached a duty owed to CVS when they provided false information to CVS for the guidance of CVS in their business transaction.

53.     The McKinneys failed to exercise reasonable care or competence in communicating to CVS that they did not own the Big Hill Avenue Property and/or failing to disclose their intention to facilitate the opening of a new competing pharmacy at the Big Hill Avenue Property.

54.     CVS reasonably relied on this false information and/or omission and, as a proximate result, has been injured by its reliance.

55.     But for the McKinneys' false information and/or omissions, CVS would not have signed the Agreement or paid the substantial consideration thereunder.

56.     CVS has been damaged by the McKinneys' negligence in an amount in excess of $75,000.00, to be determined at the trial of this matter.

## COUNT IV
### (TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIP AGAINST THE MCKINNEYS)

57. CVS re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

58. CVS has an existing business relationship with its customers.

59. The McKinneys know, or should know, of these existing business relationships.

60. The McKinneys have intentionally and/or improperly interfered with that relationship by inducing or otherwise causing CVS' customers to terminate their relationship with CVS and take their business to Spencer Drug.

61. The McKinneys employed wrongful means in interfering with CVS' existing business relationships.

62. As a result of the McKinneys' intentional and improper interference with the contracts CVS has with its customers, CVS has been damaged in an amount in excess of $75,000.00, to be determined at the trial of this matter.

## COUNT V
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP AGAINST THE MCKINNEYS)

63. CVS re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

64. CVS has prospective business relationships with customers.

65. The McKinneys know, or should know, of these prospective business relationships.

66. The McKinneys have intentionally and/or improperly interfered with the prospective relationship CVS has with customers by inducing or otherwise causing CVS' prospective customers to take their business to Spencer Drug, as opposed to CVS.

67. The McKinneys have prevented CVS from acquiring or continuing the prospective relationship.

68. The McKinneys employed wrongful means in interfering with CVS' prospective business relationships.

69. As a result of the McKinneys' intentional and improper interference with the contracts CVS has with its customers, CVS has been damaged in an amount in excess of $75,000.00, to be determined at the trial of this matter.

### COUNT VI
#### (TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIP AGAINST THE LOUISE WAGERS MCCORD TRUST)

70. CVS re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

71. CVS has an existing contractual relationship with the McKinneys.

72. The Trust knows, or should know, of this contractual relationship.

73. The Trust has intentionally and/or improperly interfered with that relationship by inducing, aiding and abetting, or otherwise causing the McKinneys to breach their non-competition agreement with CVS.

74. The Trust employed wrongful means in interfering with CVS' existing contractual relationship with the McKinneys.

75. As a result of the Trust's intentional and improper interference with the contract CVS has with the McKinneys, CVS has been damaged in an amount in excess of $75,000.00, to be determined at the trial of this matter.

### COUNT VII
### (TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONSHIP AGAINST SPENCER DRUG)

76. CVS re-alleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

77. CVS has an existing contractual relationship with the McKinneys.

78. Spencer Drug knows, or should know, of this contractual relationship.

79. Spencer Drug has intentionally and/or improperly interfered with that relationship by inducing, aiding and abetting, or otherwise causing the McKinneys to breach their non-competition agreement with CVS.

80. Spencer Drug employed wrongful means in interfering with CVS' existing contractual relationship with the McKinneys.

81. As a result of Spencer Drug's intentional and improper interference with the contract CVS has with the McKinneys, CVS has been damaged in an amount in excess of $75,000.00, to be determined at the trial of this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CVS respectfully requests this Court:

1. Issue a preliminary injunction restraining and enjoining the McKinneys from violating the terms of the Non-Competition Covenant of the Agreement;

2. Void Spencer Drug's lease agreement for the Big Hill Avenue Property;

3. Enter judgment in favor of Plaintiff against the McKinneys in an amount to be determined at trial, but in excess of $75,000.00, to compensate Plaintiff for damages caused by the McKinneys' material breach of the Non-Competition Covenant of the Agreement;

13250463.1                                16

4. Enter judgment in favor of Plaintiff against the McKinneys in an amount to be determined at trial, but in excess of $75,000.00, to compensate Plaintiff for damages caused by the McKinneys' fraud;

5. Enter an order in favor of Plaintiff and against the McKinneys rescinding the Agreement and declaring it null and void;

6. Enter judgment in favor of Plaintiff against the McKinneys in an amount to be determined at trial, but in excess of $75,000.00, to compensate Plaintiff for damages caused by the McKinneys' tortious interference with CVS' current and prospective business relationships;

7. Enter judgment in favor of Plaintiff against the Louise Wagers McCord Trust in an amount to be determined at trial, but in excess of $75,000.00, to compensate Plaintiff for damages caused by the Louise Wagers McCord Trust's tortious interference with CVS' Agreement with the McKinneys;

8. Enter judgment in favor of Plaintiff against Spencer Drug in an amount to be determined at trial, but in excess of $75,000.00, to compensate Plaintiff for damages caused by the Spencer Drug's tortious interference with the CVS' Agreement with the McKinneys;

9. Grant Plaintiff the costs of this action, including reasonable attorneys' fees; and

10. Grant Plaintiff any such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ Ryan C. Edwards
Ryan C. Edwards  (89626)
Nicholas J. Pieczonka (94130)
TAFT STETTINIUS & HOLLISTER, LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
Ph: (513) 381-2838
Fax: (513) 381-0205 (fax)
edwardsr@taftlaw.com
npieczonka@taftlaw.com

ATTORNEYS for PLAINTIFF
KENTUCKY CVS PHARMACY, LLC

OF COUNSEL:
Stephen H. Jett (Ohio Bar No. 0046821)
Taft Stettinius & Hollister, LLP
200 Public Square, Suite 3500
Cleveland, Ohio  44114
(216) 241-2838
(216) 241-3707 (fax)
sjett@taftlaw.com

13250463.1

17