UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:13-CV-25-KSF

KENTUCKY CVS PHARMACY, LLC                                                          PLAINTIFF

vs.                                            **OPINION AND ORDER**

JOHN MCKINNEY, et al.                                                               DEFENDANTS

* * * * * * * *

This matter is before the Court on the motions of Defendants Spencer Drug, LLC ("Spencer Drug") and Louise Wagers McCord Trust B ("Trust") to dismiss Plaintiff's claim of tortious interference against it. For the reasons discussed below, the motions will be denied.

I.   BACKGROUND

In 1960, John McKinney's father, Roger McKinney, and grandfather, Lucian McCord, opened M & M Drug, a pharmacy located at 110 Big Hill Avenue, Richmond, Kentucky ("Big Hill Avenue Property"). DE 19, ¶ 13. John McKinney[1] began working for M & M Drug when he was fourteen years old, became a registered pharmacist at M&M Drug in 1976, and continued in that capacity until May 31, 2001. *Id.*, ¶¶ 14-15. John and his wife, Mary, became the owners of M & M Drug when Roger retired in 1995, and they formed M & M Drug, Inc. *Id.*, ¶ 16. In 2003, upon the death of John's grandmother, Louise Wagers McCord, the title to the property on which M & M Drug was located was transferred to the Trust. *Id.*, ¶18. The present sole Trustee is Eleanor McCord McKinney, John's mother. *Id.*, ¶ 8.

On May 31, 2011, CVS, M & M Drug, John and Mary entered into an asset purchase and sale agreement ("Agreement") such that certain assets, primarily prescription files and goodwill, of M & M were transferred to CVS. DE 19-1, Ex. A. A part of the Agreement was a non-

---

[1] For clarity, the McKinney family members will be referenced by their first name. John and Mary are also referenced as "the McKinneys," consistent with the Amended Complaint.

competition covenant whereby John and Mary agreed not, directly or indirectly, to "be employed by, form, acquire, invest in, finance, own, operate, manage, assist, support, provide directly or indirectly with, whether as a stockholder, partner, lessor, lessee, member, joint venture, advisor, employee, consultant, or independent contractor, an enterprise ... which is engaged in the business of any pharmacy [or] drug store...." *Id.*; DE 19, ¶ 23. This non-competition agreement was to continue for a period of ten years and a range of ten miles from a nearby CVS store. *Id.* CVS alleges that John and Mary represented throughout the negotiations that they owned the Big Hill Avenue Property and that CVS relied on those representations to its detriment. DE 19, ¶ 29. The Agreement provided that, if M & M or the McKinneys should sell the Big Hill Avenue property during the restrictive period, the purchaser shall be bound by the same restrictions. *Id.*

CVS required the McKinneys separately and specifically to acknowledge the non-competition covenant (Article 6) in their signature blocks to the Agreement. *Id.,* ¶ 27; DE 19-1 at 12. John's parents, Roger and Eleanor were witnesses to these signatures. DE 19-1 at 12. Roger is now deceased and Eleanor is the only Trustee of the Trust. DE 19, ¶¶ 8, 37.

On November 1, 2012, John Spencer of Spencer Drug began doing business as Madison Drug at the Big Hill Avenue Property, which is 0.4 miles from CVS' store. Spencer Drug leased the Big Hill Avenue Property from the Trust. *Id.* ¶¶ 32-34. Spencer/Madison Drug held itself out in a promotional flyer as "Formally [sic - formerly] known as M & M Drug." ¶ 3. On the Richmond Chamber of Commerce web site, Spencer/Madison Drug promoted a December 14, 2012 ribbon cutting ceremony by inviting "friends and businesses" to "check out our newly renovated pharmacy." ¶ 32.

Plaintiff alleges claims of tortious interference with existing contractual relationship against the Trust in Count VI and against Spencer Drug in Count VII. The Trust seeks dismissal of the tortious interference claim. Spencer Drug's first motion to dismiss addresses only the tortious interference claim. An allegation of unfair competition by Spencer Drug was not made until an

2

Amended Complaint. Spencer Drug's second motion to dismiss the unfair competition claim is not yet ripe for consideration by the Court.

## II. ANALYSIS

### A. Standard for Motion to Dismiss

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), all of a plaintiff's allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005).

### B. Tortious Interference

Under Kentucky law, a claim for tortious interference with a contract requires a Plaintiff to establish: (1) the existence of a contract; (2) defendant's knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages; and (6) defendant had no privilege or justification to excuse its conduct. *CMI v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995).

In *National Collegiate Athletic Association v. Hornung*, 754 S.W.2d 855, 857-58 (Ky. 1988), the court held that the factors in § 767 of the *Restatement (Second) of Torts* fairly reflect Kentucky law. *ATC Distribution Group, Inc. v. Whatever It Takes*, 402 F.3d 700, 717 (6th Cir. 2005). The factors for determining whether interference with a contract is improper are: "(a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties." *Restatement (Second) of Torts § 767.*

**C. Spencer Drug's Motion to Dismiss**

Spencer Drug argues that CVS failed to state a claim because it did not plead fraud with particularity. DE 11-1 at 3. Fraud is a possible, but not a required, element of tortious interference. A plaintiff need only show that the interference was intentional and improper. *Cullen v. South East Coal Co.,*, 685 S.W.2d 187, 189 (Ky. Ct. App. 1984). CVS' tortious interference claim is not based on fraud. DE 17 at 7, n. 2. Spencer Drug is not entitled to dismissal on this ground.

Next, Spencer Drug argues that the Trust owned the property; it was not a party to the non-compete Agreement; and it was not bound by the Agreement. Accordingly, Spencer Drug claims it did not interfere with the Agreement by leasing the property from the Trust. DE 11-1 at 4-5. CVS responds that its allegations include all the elements for a claim of tortious interference. CVS alleged that the McKinneys hold an interest in the Trust as beneficiaries and may have significant influence over the Trustee, John's mother, and the business of the Trust as evidenced by the very favorable leasing terms they enjoyed while owning and operating M & M Drug, as compared to the terms applicable to Spencer Drug. DE 19, ¶¶ 4, 19, 30, 36, 38. CVS alleged that Spencer Drug "knows or should know of" the contractual relationship between the McKinneys and CVS. ¶ 78. Nonetheless, Spencer Drug leased the Big Hill property and intentionally held itself out as "our newly renovated pharmacy" and "Formally [sic formerly] known as M & M Drug." ¶¶ 3, 32-35, 79. CVS alleged that Spencer Drug's conduct caused CVS to lose customers, prescription business and goodwill. ¶¶ 35 79, 81. CVS alleged damages and that Spencer Drug acted without privilege or justification. ¶¶ 35, 79-81.

Spencer Drug argues that the Amended Complaint is fatally flawed because it does not detail "how" Spencer Drug could have had knowledge of the Agreement and the obligation not to compete. DE 31 at 3. Spencer Drug cites no authority for this contention. On the other hand, CVS relies on *Ira Green, Inc. v. Military Sales & Service Co.*, No. 10-207-M, 2012 WL 2178984 at *1 (D.R.I. June 13, 2012), which holds that allegations that a party knew or had reason to know of the

4

contractual relationships are sufficient in a tortious interference case. Moreover, Rule 9(b) states that "knowledge ... may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, Spencer Drug's motion to dismiss will be denied.

### D. The Trust's Motion to Dismiss

The Trust moves to dismiss on the ground that a restrictive covenant can be imposed on real property only through an agreement with the owner of the land. Because the McKinneys did not own the Big Hill Avenue Property, any contract with the McKinneys that attempts to restrict use of the real property would be unenforceable. Accordingly, the Trust argues there can be no interference with an unenforceable contract. It also claims it did not act improperly in leasing the property to Spencer Drug. DE 12.

CVS responds that it "neither argues nor alleges that it contracted with the McKinneys for a restrictive covenant on the property." DE 18 at 2. Instead, it "is seeking to enforce the terms of the Agreement with the McKinneys, whereby the McKinneys promised not to assist or support a competitor of CVS." *Id.* at 3. CVS argues that it has stated a tortious interference claim against the Trust for "knowingly, intentionally and improperly causing the McKinneys to breach their Agreement with CVS." *Id.*

CVS alleged that the Trust knew about the Agreement. DE 19, ¶ 72. The Trustees witnessed the McKinneys' signatures where the McKinneys acknowledge that they are bound by the non-competition provision. ¶ 27; DE 19-1 at 12. The McKinneys promised not to "directly or indirectly ... assist [or] support" a competitor of CVS. DE 19, ¶ 78. Thereafter, the Trust leased the same property to a direct competitor, Spencer Drug, who publicly advertised for friends and businesses to check out the newly renovated pharmacy formerly known as M & M Drug. The Amended Complaint alleges that the McKinneys hold an interest in the Trust and have influence over the Trust. ¶¶ 4, 30, 36. It further alleges that the Trust "intentionally and/or improperly interfered" with CVS' contract with the McKinneys. ¶ 73. It alleges that the Trust's conduct caused

5

the breach, and the breach resulted in damages. ¶¶ 75, 35. Finally, it alleges that the Trust acted without privilege or justification. ¶ 74.

CVS also takes issue with the Trust's argument that CVS had an obligation to search public records to determine ownership of the real property. No authority is cited for this proposition. DE 12-1 at 4, 8. CVS cites Kentucky authority to the contrary. *Harris v. Brock*, No. 2002-CA-2287-MR, 2003 WL 22872319 at *2 (Ky. Ct. App. Feb. 9, 2013) ('[F]raud may be predicated on false representation although the truth could have been ascertained from public records," (quoting *Cowles Ex'r v. Johnson*, 297 Ky. 454, 179 S.W.2d 674 (1944)). The Trust's argument is not well taken.

## II.  CONCLUSION

**IT IS ORDERED** that Defendant Spencer Drug's motion to dismiss [DE 11] is **DENIED**, and the Defendant Trust's motion to dismiss [DE 12] is **DENIED**.

This April 15, 2013.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge