UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:13-CV-25-KSF

KENTUCKY CVS PHARMACY, LLC                                              PLAINTIFF

vs.                              **OPINION AND ORDER**

JOHN MCKINNEY, et al.                                                   DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff's motion for preliminary injunction. For the reasons discussed below, the motion will be denied.

**I.    BACKGROUND**

Many of the background facts of this case are set forth in the Court's Opinion and Order dated April 15, 2013 (DE 37) and will not be repeated here. Plaintiff filed its motion for injunctive relief soon after filing its Complaint. It then filed an Amended Complaint, sought expedited discovery, and the parties filed supplemental briefing. Meanwhile, CVS moved to dismiss two counts (Fraud and Negligent Misrepresentation) of its claims against the McKinneys before the McKinneys filed an Answer to the Amended Complaint. Fed. R. Civ. P. 41(a)(1)(A)(I). Counter-claims by the McKinneys and the Trust were also dismissed.

CVS's remaining counts against the McKinneys are Breach of Contract, Tortious Interference With Existing Contractual Relationship, and Tortious Interference With Prospective Business Relationship. CVS alleges Tortious Interference With Existing Contractual Relationship against the Louise Wagers McCord Trust B ("Trust") and Spencer Drug and Unfair Competition against Spencer Drug. For injunctive relief, CVS seeks to enjoin the McKinneys from violating their non-competition agreement, to void all lease agreements between the Trust and Spencer Drug, and to enjoin Spencer Drug from operating a pharmacy at its current location.

In brief summary, the McKinneys sold certain assets of M & M Drug to CVS and signed a covenant not to compete within ten miles for ten years. Seventeen months later, the Trust that owns the property on which M & M Drug was located leased the property to Spencer Drug. The sole Trustee of the Trust at the time of the lease was John McKinney's mother, Eleanor. CVS claims the lease to Spencer Drug violated the non-compete agreement. There is no dispute that Spencer Drug is operating within four miles of CVS.

CVS originally maintained that the McKinneys represented to CVS that they, not the Trust, owned the property on which M & M pharmacy was located and on which Spencer Drug is currently located. DE 19 at 2. Discovery revealed, however, that documents from the McKinneys disclosed that they were leasing or renting the property. DE 65, 66. John Newman, CVS's Regional Director of Pharmacy Acquisitions, admitted that he was told the "family" owned the property, and he incorrectly assumed that meant the McKinneys. Newman Dep. at 29-30, 135-36, 154-55. On a Purchase and Sale Abstract, he wrongly said "yes" that "Seller Owns Building." *Id.* at 40-41, 105. He also admitted that his affidavit stating the McKinneys repeatedly represented that they owned the property at the time they signed the agreement was not a true statement. *Id.* at 96. Had he realized that the McKinneys did not own the property, CVS would have required a separate restrictive covenant from the property owner. *Id.* at 136-37, 145-47.

In its Amended Complaint, CVS alleged that the McKinneys were involved in the Trust administration and/or had significant influence over the Trustee and business interests of the Trust. CVS sought limited, expedited discovery relating to the requested preliminary injunction, including information regarding the relationship between the McKinneys and the Trust. DE 15-1. In its Supplemental Memorandum in support of injunctive relief, CVS argues that the McKinneys for years had preferential leasing terms, that they are contingent beneficiaries of the Trust, and that John assisted the Trustee, his mother, in leasing the property to Spencer Drug. CVS also argues that the M & M Drug rent checks were made payable to his parents, not the Trust, and were not

deposited into a Trust account. CVS claims that the McKinneys and the Trust worked together and caused the non-compete agreement to be violated. DE 61. It is CVS's position that "the McKinneys are so conflated with – and enmeshed in – the Trust, that they cannot be easily separated from one another." *Id.* at 4. It also argues that "the McKinney family does not treat the Trust as a separate legal entity." *Id.* at 12.

The McKinneys and the Trust defend against Plaintiff's claims by arguing that the Trust is a separate legal entity that had every right to lease the property to whomever it chose. They present evidence that the negotiations and leasing decision were made by Eleanor McKinney, and that she manages the Trust with the assistance of her daughter, who is a CPA. They claim John McKinney's role with respect to Spencer Drugs was to drive Eleanor McKinney to the site to meet John Spencer and to answer questions regarding the property where John McKinney was the pharmacist for many years. DE 67, 68. Spencer Drug corroborates that the negotiations were with Eleanor McKinney, and further argues that the goodwill of M & M Drug was not purchased by CVS. DE 69.

## II. ANALYSIS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 23 (emphasis in original). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id. See also Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995) (factors to be balanced).

A.     **Likelihood of Success on the Merits**

CVS's claims of breach of contract and tortious interference all hinge on proof that the McKinneys and the Trust are basically a single entity, rather than separate entities. This is a threshold issue that is essential to all of the tortious interference claims. CVS argues the McKinneys are "conflated" and "enmeshed" with the Trust, such that "they cannot be easily separated from one another." DE 61 at 4. In other words, it is CVS's position that the Trust is the "alter ego" of the McKinneys. Disregard of the separate identity of a trust requires much more than a family relationship and some interaction between the trust and third parties. "[T]he corporate veil should only be pierced 'reluctantly and cautiously....'" *White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 62 (Ky. Ct. App. 1979) (overruled on other grounds by *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155+ (Ky. 2012)).

The same type of veil piercing or alter ego analysis applicable to corporations is applied in disregarding the separate identity of a family trust. *See Limbright v. Hofmeister*, Case No. 09-cv-107, 2011 WL 5523713 at *3 (E. D. Ky. 2011). The two key dispositive elements are: "(1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel,* 360 S.W.3d at 165 (Ky. 2012).

CVS has shown some involvement by John McKinney in the lease to Spencer Drug – vetting potential lessees and showing the property to Spencer. John is also a contingent beneficiary of the Trust and received favorable lease terms from the Trust while operating M & M Drug. While it is "possible" that CVS can show that the McKinneys and the Trust are one and the same, there is not sufficient evidence of "dominion" over the Trust such that it is "likely" at this stage that CVS will succeed on the merits of disregarding the Trust's identity.

It is also not "likely" at this stage that CVS can show a continued recognition of the Trust "would sanction fraud or promote injustice." *Id.* The McKinneys truthfully disclosed that they did

4

not own the property on which M & M Drug was located. CVS made the mistake of assuming they owned the property. If CVS had not made an incorrect assumption, it could have protected itself by obtaining a restrictive covenant from the Trust. Newman Dep. at 154-55. Without a restrictive covenant, the Trust is free to lease the property to whomever it wishes.

A prima facie case for tortious interference would require CVS to establish: "(1) the existence of a contract; (2) [defendant's] knowledge of the contract; (3) that [defendant] intended to cause a breach of that contract; (4) that defendant's actions did indeed cause a breach; (5) that damages resulted to [plaintiff]; and (6) that defendant had no privilege or justification to excuse its conduct." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.2d 1, 6 (Ky. Ct. App. 2012). While there is evidence that the McKinneys, the Trust, and Spencer were aware of the existence of a contract, there will be no proof of breach or improper interference if the Trust was a distinct entity with no restrictive covenant.

CVS's allegations of tortious interference with contractual relationships and prospective business relations claim that the McKinneys have "intentionally and/or improperly interfered" with CVS's existing business relationships with its customers and "employed unlawful means in interfering with CVS's existing business relationships." DE 19, ¶ 61. CVS's corporate representative said he had no facts, witnesses, evidence, documents, or information to support the allegations. DE 63 at 16-17. Accordingly, it is not "likely" at this stage that CVS will succeed on the merits of this claim.

The remaining claim is one of unfair competition by Spencer Drug, which is based upon Spencer Drug's advertising that used the name M & M Drug. CVS alleges that it "purchased the goodwill of M & M Drug" and that Spencer used the goodwill that CVS purchased. Amended Complaint, DE 19, ¶¶ 83, 85. As discussed more fully below, however, CVS did not purchase the goodwill of M & M Drug. This was an asset purchase, and the goodwill purchased was limited to that associated with the assets. CVS only bought the right to use the name M & M Drug for six

5

months. Spencer Drug did not lease the property and advertise for more than seventeen months. Accordingly, it is not "likely" that CVS will prevail on the merits of this claim.

### B. Irreparable Injury

CVS has failed to demonstrate that the extraordinary remedy of injunctive relief is warranted. For its injury, CVS claims that it is losing pharmacy customers and filling as many as several hundred fewer prescriptions per week. DE 14-1 at 16. CVS claims that monetary damages from the interference with customer relationships are difficult to calculate. *Id.* CVS expected, however, to retain only 40 percent of M & M Drug's prescription customers. Newman Dep. at 36-37. Newman as the Corporate Representative testified that the $200,000 paid for the non-compete agreement was related to "CVS's expected damages should the sellers compete." CVS Corporate Rep. Depo. at 33. Thus, CVS estimated its damages for breach of the non-compete agreement even before purchasing M & M Drug. "[A] plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)

CVS also claims a loss of business goodwill and argues that the extent of such loss is "seldom fully calculable." DE 14-1 at 15. The evidence is, however, that this was as "asset purchase." Newman Depo. at 36. The Agreement states that the assets being sold are (a) merchandise inventory; (b) prescription files; (c) telephone; (d) pharmacy computer; and (e) "[a]ll goodwill with respect to the Assets being sold hereunder...." DE 69-7 at 1-2. CVS did not purchase all of the goodwill of M & M Drug, but only that associated with specific assets. In fact, CVS bought the right to use the seller's trade name for only six months. *Id.* at 7, ¶ 7. Accordingly, CVS cannot claim damages for the loss of the goodwill of M & M Drug. CVS has failed to show that irreparable injury is likely in the absence of a preliminary injunction. *Winter,* 555 U.S. at 20.

### C. Harm To Others and Public Interest

The McKinneys have not opened another pharmacy or practiced as pharmacists in competition with CVS. Accordingly, injunctive relief would have little effect on their conduct. There

is no question, however, that the Trust and Spencer Drug would be harmed if the Court were to grant the requested relief of voiding Spencer Drug's lease agreement and restraining it from operating a pharmacy at the Big Hill Avenue Property. Spencer Drug would be put out of business at this location. The Trust would lose significant income. The public interest in allowing businesses to operate in the absence of a determination of wrongdoing would not be served. Moreover, CVS is seeking equitable relief when the current situation arose from the mistake of its own representative who also provided an affidavit with untrue statements. The balance of the equities is not in CVS's favor in this early stage of the case. Accordingly, the motion for preliminary injunction will be denied.

### III. CONCLUSION

**IT IS ORDERED** that Plaintiff's motion for a preliminary injunction [DE 14] is **DENIED**.

This September 20, 2013.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge